IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GERRARD D'ANDRE JONES,

     Plaintiff,

v.                           Case No. 4:18-cv-76-MW-GRJ

TORREY M. JOHNSON, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary

Judgment.  ECF No. 89.  Plaintiff, an inmate in the custody of the Florida

Department of Corrections ("DOC") proceeding *pro se* and *in forma*

*pauperis*, initiated this civil rights action under 42 U.S.C. § 1983 on

February 2, 2018,[1] for conduct that allegedly occurred when he was

incarcerated at Jefferson Correctional Institution ("Jefferson CI") in

Monticello, Fla.  ECF No. 1.  Thereafter he filed the Second Amended

Complaint, which is the operative pleading in this case.  ECF No. 15.

---

[1] The "mailbox rule" applies to Plaintiff's filings because he is incarcerated and proceeding *pro se. Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993).

The parties have since engaged in discovery regarding Plaintiff's constitutional claims, *see* ECF No. 102, and on July 18, 2019, Defendants filed the instant dispositive motion, ECF No. 89.[2]  Plaintiff has filed a response in opposition.  ECF No. 104.  The motion is therefore ripe for the Court's consideration.  For the reasons discussed below, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment should be **DENIED**.

## I. BACKGROUND

### A.    Evidence

On October 4, 2014, Plaintiff submitted a formal grievance concerning "personal threats" Defendant Torrey Johnson (referred to in the grievance as Colonel Johnson) made against Plaintiff.  ECF No. 89-3.  In his grievance, Plaintiff made disparaging remarks about Defendant

---

[2] Defendants filed as exhibits to their motion for summary judgment: Plaintiff's "Inmate Population Information Detail" from the DOC website (ECF No. 89-2); Plaintiff's grievance dated October 4, 2014 (ECF No. 89-3); DOC disciplinary report #103-141396 (ECF No. 89-4); a DOC disciplinary worksheet, pertaining to disciplinary report #103-141396 (ECF No. 89-5); a declaration from Defendant Johnson, dated June 14, 2019 (ECF No. 89-6); a declaration from Defendant Butler, dated June 13, 2019 (ECF No. 89-7); DOC Inspector General Master Report #14-13324 (ECF No. 89-8); DOC Inspector General Master Report #14-13752 (ECF No. 89-9); DOC disciplinary report #103-141395 (ECF No. 89-10); a DOC disciplinary worksheet, pertaining to disciplinary report #103-141395 (ECF No. 89-11); audio of DOC Senior Inspector John Ulm's interview of Plaintiff on October 21, 2014 (ECF No. 89-12); audio of Senior Inspector Ulm's interview of Defendant Johnson on December 17, 2015 (ECF No. 89-13); audio of Senior Inspector Ulm's interview of Assistant Warden Antonio Hudson on December 21, 2015 (ECF No. 89-14); Plaintiff's deposition on January 25, 2019 (ECF No. 89-15); and Plaintiff's DOC medical records (ECF Nos. 89-16, 89-17, 89-18, 89-19, 89-20, 89-21, 89-22, 89-23, 89-24).

Johnson, including calling him "a Black Hitler." *Id.* Although the grievance was referred to the DOC Inspector General, *id.* at 3, Plaintiff was issued a disciplinary report (#103-141396) on October 6, 2014, for his comments about Defendant Johnson, citing the Florida Administrative Code's prohibition on disrespecting "officials, employees, or other person of constituted authority … by means of words, gestures, and the like," ECF No. 89-4 at 1. The disciplinary report appears to have been written by Defendant Johnson. *Id.*

On October 7, 2014, Plaintiff was called into a meeting at which Assistant Wardens Antonio Hudson and J. Speights (both now deceased) were present, as well as Defendant Johnson and Defendant Patricia Butler. ECF Nos. 15, 89-6, 89-7. This is where the parties' stories diverge.

According to Defendants,[3] they served on an Institution Classification Team ("ICT") with Hudson and Speights that conducted several meetings on October 7, 2014, to address classification decisions for inmates at

---

[3] Defendants offer sworn declarations from Defendants Johnson and Butler in support of the instant motion, as well as other DOC records. "A non-conclusory affidavit which complies with [Federal Rule of Civil Procedure 56] can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." *United States v. Stein*, 881 F.3d 853, 858–59 (11th Cir. 2018) (en banc). "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Jefferson CI. ECF No. 89-6 at 1; ECF No. 89-7 at 1. Defendant Johnson recalls that the ICT attempted to meet with Plaintiff regarding concerns for his safety, specifically those raised in his October 4, 2014, grievance. ECF No. 89-6 at 1. During the meeting, Plaintiff was loud and argumentative. ECF No. 89-6 at 2; ECF No. 89-7 at 1. Plaintiff was ordered on "several occasions" to "cease his behavior," but refused to comply. ECF No. 89-6 at 2; ECF No. 89-7 at 1. Consequently, Plaintiff was escorted out of the ICT meeting room. ECF No. 89-6 at 2; ECF No. 89-7 at 1. Defendants state that they did not witness Hudson abuse Plaintiff in the meeting room or when he was escorted outside, and that had they witnessed any abuse they would have intervened on Plaintiff's behalf. ECF No. 89-6 at 2; ECF No. 89-7 at 2.[4]

According to Plaintiff,[5] on October 7, 2014, after he was handcuffed

---

[4] When Defendant Johnson was interviewed by Senior Inspector Ulm on December 17, 2015, he stated under oath that he "did not hear Mr. Hudson cursing or yelling at [Plaintiff] and did not see him use any physical force on Inmate Jones, he said [Plaintiff] did become belligerent and was escorted out of the room." ECF No. 89-9 at 22.

[5] Plaintiff signed under penalty of perjury the Second Amended Complaint and his response in opposition to Defendants' motion for summary judgment. ECF No. 15 at 12; ECF No. 104 at 9. These filings, therefore, are treated by the Court like sworn affidavits. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (treating a plaintiff's "statements in his verified complaint" and "sworn response to the officers' motion for summary judgment]" as testimony); *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). Plaintiff also testified under oath in a discovery deposition on January 25, 2019, ECF No. 89-15, and in an interview with Senior Inspector

and escorted to the meeting room where Defendants, Hudson, and Speights were present, Hudson and Defendant Johnson approached Plaintiff ("getting physically in [his] face"), screamed at him, and pointed their fingers in his face.  ECF No. 15 at 8.  Hudson then told Plaintiff not to "write Johnson up no more."  *Id.*  When Hudson called Plaintiff "old school," Plaintiff asked Hudson whether he was going to harm him.  *Id.* at 8–9.  Hudson then grabbed Plaintiff (while Plaintiff was still handcuffed) and twisted Plaintiff's left arm and shoulder "into a painfully unnatural series of directions, resulting in the dislocation of [his] arm/shoulder, completely out of the socket."  *Id.* at 9; *see also* ECF No. 89-9 at 16; ECF No. 104 at 2.  Hudson continued to manhandle Plaintiff for two minutes while Defendant Johnson cursed at Plaintiff.  ECF No. 15 at 9.[6]  Speights and Defendant Butler did not physically or verbally intervene.  *Id.*

Hudson then "jacked [Plaintiff] up by [his] left arm/shoulder and collared [him] with his other hand" before dragging Plaintiff into the hallway.  ECF No. 15 at 9.  Plaintiff "scream[ed] in extreme pain," and Hudson ordered two officers to return Plaintiff to his cell.  *Id.* at 9–10.

---

Ulm on October 21, 2014, ECF No. 89-9 at 16.

[6] Plaintiff testified in his deposition that Defendant Johnson encouraged Hudson's use of force while Plaintiff was screaming.  *See* ECF No. 89-15 at 41.  Plaintiff testified further that Hudson slammed him into a wall (hitting Plaintiff's head) and grabbed him around his neck to drag him into the hallway.  *Id.* at 42–43.

Plaintiff asked the officers to take him to "medical" (the infirmary) to treat his injuries, but the officers said Hudson ordered them to take Plaintiff to his cell and forbid him from going to the infirmary.  ECF No. 15 at 10; ECF No. 104 at 3.  Plaintiff submitted a "sick-call slip" with the "confinement nurse" and was taken to the infirmary on October 8, 2014.  ECF No. 104 at 3.  Plaintiff claims that he was examined by "Dr. Pliskin" on October 8, 2014, who ordered that he receive pain-relief medications and an arm sling and have an x-ray of his left shoulder.  *Id.* at 3.  When Pliskin told Plaintiff that his shoulder "slipped back in place," Plaintiff responded that he laid on his back all night pressing it "back into place" but the muscle felt "torn loose."  ECF No. 89-15 at 44–45.

Plaintiff states that following the October 7, 2014, incident and his October 8, 2014, medical visit, Defendant Johnson, along with Hudson, "intercepted/stole" his grievances and interfered with medical treatment by canceling his surgery, ordering that he not be permitted to leave his cell, and prohibiting his access to his medical files.  ECF No. 15 at 10–11; *see also* ECF No. 89-15 at 45 ("So Hudson and Johnson got wind of it and they got my medical records.  And near the end of November—you've got my medical records.  End of November, they went into my medical records, they went to medical, and they wrote in their own handwriting do not let this

6

inmate go to Lake Butler for his surgery.  He is not to go anywhere.  He is a security threat.  And they signed they [sic] names to it.").

Defendants submitted Plaintiff's DOC medical records as exhibits to their motion for summary judgment, ECF Nos. 89-16, 89-17, 89-18, 89-19, 89-20, 89-21, 89-22, 89-23, 89-24, and they reflect the following.  On October 8, 2014, at about 9:20 a.m., Plaintiff was examined by Nurse Martinez.  ECF No. 89-20 at 22.  Nurse Martinez notated that an injury was not noticed, *id.*, but completed the Department's "Fracture/Dislocation/Sprain Protocol" form, *id.* at 21.  Martinez directed Plaintiff to report to an advanced practice nurse prescriber ("APNP") for evaluation and ordered an x-ray of Plaintiff's shoulder.  *Id.* at 20–21.

On October 14, 2014, Plaintiff underwent an x-ray of his left shoulder. ECF No. 89-20 at 20, 40.  The radiologist, Dr. Dineen, determined that the image did not demonstrate a "fracture, dislocation, or subluxation," the "cortical margins [were] intact," and the "soft tissue planes [were] normal." *Id.* at 40.  However, Dr. Dineen notated findings of "mild osteoarthritis of the glenohumeral joint and the acromioclavicular joint," "lateral downsloping of the acromion," and "an anatomic variant which can predispose to rotator cuff pathology."  *Id.*  Dr. Dineen recommended "[f]ollow up as clinically indicated."  *Id.*

7

On October 17, 2014, APNP Pliskin reviewed Dr. Dineen's radiology report from Plaintiff's October 14, 2014, x-ray and completed a Department "Consultation Request" for Plaintiff to receive a "routine" orthopedic consult that would allow the infirmary to "[e]vauate and recommend [a] diagnostic plan." ECF No. 89-18 at 5.  Pliskin notated a "provisional diagnosis" of a "left shoulder injury." *Id.*

On November 6, 2014, Plaintiff submitted an "Inmate Request" complaining that his left "shoulder/arm" was "popping out of place" and that the shoulder muscle felt "torn." ECF No. 89-19 at 32.  On November 7, 2014, the infirmary was advised that Plaintiff was unable to leave his cell "per orders of the warden." ECF No. 89-20 at 9.  Pliskin directed that Plaintiff be advised "Dr. Cherry" recommended "rotator cuff exercise in lieu of [orthopedic] referral." *Id.*  The infirmary was also informed on November 19, 2014, and November 26, 2014, that Plaintiff was being held in his cell. *Id.* at 8.  The November 19, 2014, entry in his medical record explains the hold was "per [Defendant] Johnson." *Id.*

Plaintiff continued to complain about the pain in his left shoulder until (at least) December 2014.  ECF No. 89-19 at 16, 34, 35, 38; ECF No. 89-20 at 3–4, 15.  Plaintiff was transferred to Santa Rosa Correctional Institution in December, at which point he was (again) referred to an

8

orthopedic specialist for treatment.  ECF No. 89-18 at 6.

**B.    Plaintiff's Constitutional Claims and Defendants' Motion for Summary Judgment**

In the Second Amended Complaint, Plaintiff asserts Defendants violated his First, Eighth, and Fourteenth Amendment rights.  ECF No. 15 at 12.  Specifically—construing Plaintiff's pleadings liberally—Plaintiff complains that: (1) Defendants failed to intervene when Hudson used excessive force against him in violation of the Eighth Amendment on October 7, 2014, *id.* at 12; (2) Defendant Johnson was deliberately indifferent to his serious medical need in violation of the Eighth Amendment when Johnson canceled Plaintiff's "medical surgery/treatment" and denied him "needed care," *id.* at 11;[7] and (3) Defendants retaliated against Plaintiff in violation of the First Amendment by intercepting his grievances, interfering with his medical treatment, prohibiting him from accessing his medical files, and writing disciplinary reports against him, *id.* at 11–12.  As to relief, Plaintiff seeks nominal damages, a declaratory judgment that

---

[7] Plaintiff states in the Second Amended Complaint that these "actions or inactions" denied him "due process/equal protection of the law" in contravention of the Fourteenth Amendment, but the Court construes these allegations as a claim for deliberate indifference under the Eighth Amendment (made applicable to the states through the Fourteenth Amendment).  *Gary v. Modena*, 244 F. App'x 997 1000 (11th Cir. 2007).  Plaintiff does not otherwise state a cause of action under the Fourteenth Amendment's Due Process or Equal Protection Clauses for the reasons explained by Defendants.  ECF No. 89 at 17–21.  As evidenced by the arguments in the instant motion, Defendants were on notice that Plaintiff raised a deliberate indifference claim.  *Id.* at 12–16.

Defendants violated his rights, compensatory damages, attorney's fees, and all other relief deemed just and proper. *Id.* at 12.

Defendants argue they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because "all objective evidence points towards nothing happening consistent with the allegations alleged by Plaintiff." ECF No. 89 at 14; *see also id.* at 15–16 ("The incident alleged by Plaintiff did not happen, and there simply is no supporting information, other than Plaintiff's own allegations. All evidence, including the medical records which Plaintiff attempts to rely upon indicate that Plaintiff was no [sic] injured."). Defendants say further that Plaintiff's First Amendment retaliation claim fails because he has not alleged an adverse action by Defendants to deter constitutionally protected speech and that any claim based on the October 6, 2014, disciplinary report, No. 89-4, is barred under *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011), because Plaintiff was found guilty of the conduct giving rise to the report. ECF No. 89 at 8–12. Finally, Defendants allege that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), precludes an award of compensatory damages in this case because Plaintiff was not injured. *Id.* at 21–25.

## II.  SUMMARY JUDGMENT STANDARD

The entry of summary judgment is appropriate only when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff").  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999); *see also Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) ("The summary judgment standard requires that we resolve all

11

reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson,* 477 U.S. at 250; *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).  In civil actions filed by inmates, federal courts,

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006) (internal citations omitted).

Conclusory allegations based on subjective beliefs are insufficient to create

a genuine issue of material fact.  *Leigh v. Warner Bros., Inc.*, 212 F.3d
1210, 1217 (11th Cir. 2000).

## III.  DISCUSSION

### A.    Eighth Amendment Failure to Intervene Claims

Disputed issues of material fact preclude summary judgment on
Plaintiff's Eighth Amendment failure to intervene claims against
Defendants.  The Eighth Amendment provides the right to be free from
cruel and unusual punishment.  U.S. Const. amend. VIII.  The use of
excessive physical force against a prisoner may constitute cruel and
unusual punishment in violation of the Eighth Amendment.  *Hudson v.
McMillian*, 503 U.S. 1, 4 (1992).  "In Eighth Amendment excessive force
cases, the 'core judicial inquiry' is 'not whether a certain quantum of injury
was sustained, but rather whether force was applied in a good-faith effort to
maintain or restore discipline, or maliciously and sadistically to cause
harm.'"  *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting
*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)); *see also Sears v. Roberts*, 922
F.3d 1199, 1205 (11th Cir. 2019) ("*Sears v. Roberts*").

Five factors should be considered in determining whether force was
used sadistically and maliciously: (1) the extent of injury; (2) the need for
application of force; (3) the relationship between that need and the amount

13

of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999); *see also Jacoby v. Mack*, 755 F. App'x 888, 898 (11th Cir. 2018).

When the Court considers whether a corrections officer's use of force was excessive, it affords the officer a wide range of deference. *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 1990). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). That is, "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Johnson v. Moody*, 206 F. App'x 880, 884–85 (11th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9–10).

Lastly, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). This duty to intervene arises from the requirement embedded in the Eighth Amendment that

14

prison officials "'take reasonable measures to guarantee the safety of the inmates.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Although the facts underlying any two constitutional claims are seldom identical, Plaintiff's Eighth Amendment claims are typical in that the parties present two different versions of events.  Plaintiff says under penalty of perjury—on multiple occasions prior to and during this litigation—that he was brutally attacked by Hudson at the encouragement of Defendant Johnson and without intervention by Defendant Butler.  On the other hand, Defendants swear that the assault did not occur.  This is a genuine issue of material fact.

There is no question that both stories about what occurred in the ICT meeting room on October 7, 2014, cannot be true.  The Court, however, is duty-bound at this juncture to view the evidence in Plaintiff's favor.  So assuming Defendants failed to intervene when Hudson attacked Plaintiff— as the undersigned must accept because Plaintiff's sworn testimony in the record is evidence—a reasonable jury could find that Hudson's use of force was sadistic and malicious *and* that Defendants abandoned their constitutional obligation to protect Plaintiff from Hudson's abuse. Therefore, summary judgment is not warranted on Plaintiff's Eighth

Amendment failure to intervene claims.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (holding the contradiction between the parties' sworn allegations about what they observed "presents a classic swearing match, which is the stuff of which jury trials are made").

Defendants nevertheless argue they are entitled to summary judgment because Plaintiff's allegations are contradicted by "all" of the "objective evidence" in the record, namely the DOC medical records.  ECF No. 89 at 14.  This argument rests on the legal principle the Supreme Court set forth in *Scott v. Harris*—that courts need not accept a party's assertion when it is "blatantly contradicted by the record, so that no reasonable jury could believe it."  550 U.S. at 380.[8]  The objective evidence the Supreme Court credited there was a videotape of the incident giving rise to the plaintiff's claims, which refuted the plaintiff's allegations.  *Id.* at 378.

Defendants' reliance on Plaintiff's DOC medical records is different.  First, the records are not objective to the extent they were created by DOC employees and contractors.  *See Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 916 (11th Cir. 2019) ("*Sears v. Warden*") ("Although

---

[8] The rule announced in *Scott*, however, was not groundbreaking in the Eleventh Circuit and "did not tinker with the summary judgment standard[.]"  *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013).

Nurse Sapp is not a party to this litigation, she was employed at the same

facility as the named defendants at the time she made the report on which

the district court relied.  To the extent a medical report can be considered

'objective,' her report was not akin to one from a neural medical provider

because she had an employment relationship with the facility whose

officials were being sued."); *Joassin v. Murphy*, 661 F. App'x 558, 560 (11th

Cir. 2016) ("As a former employee and current contractor of [DOC], the

nurse is an interested witness.").  What's more, Plaintiff has alleged that

Defendant Johnson, along with Hudson, maintained some control over the

accuracy of his DOC medical records by interfering with Plaintiff's medical

treatment.  ECF No. 104 at 4.[9]

Second, unlike video evidence, medical records are not irrefutable.

*See Sears v. Roberts*, 922 F.3d at 1208 n.4 ("A reasonable jury could

believe that Sears suffered more injuries than the nurse recorded[.]");

---

[9] Plaintiff has also claimed that Hudson and Defendant Johnson altered his medical records.  ECF No. 15 at 11.  For the purpose of resolving this motion, the Court does not accept this allegation as true because it is conclusory and there is no evidence in the record supporting such an inference.  *See Feliciano*, 922 F.3d at 1208 (describing "nonconclusory" statements as "specific, discrete facts of the who, what, when, and where variety").  Indeed, in his response to Defendants' motion for summary judgment, Plaintiff only points to the entries in his medical records reflecting Hudson and Defendant Johnson's orders that Plaintiff not be allowed to visit the infirmary for medical evaluation or treatment because of supposed security risks.  ECF No. 104 at 4.  Whether Defendant Johnson's interference with Plaintiff's medical treatment amounts to deliberate indifference or retaliation is a separate issue.

*Sears v. Warden*, 762 F. App'x at 916–17 (distinguishing medical records from the "incontrovertible video evidence" in *Scott* because the "records involve people and all their attendant mental infirmities, biases, and limitations-in their creation"); *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("While it is true that Reid's medical records do not support the version of the facts he presents in his affidavit, all this means is that there is conflict in the evidence, which we must resolve at the summary judgment stage in Reid's favor.").

Third, and finally, Plaintiff's medical records only provide evidence relating to his allegations of injury and do not provide uncontroverted evidence whether Hudson applied excessive force or whether Defendants failed to intervene.  In short, the records do not contradict Plaintiff's account of Defendants' actions and thus do not negate his other sworn testimony in this case.  *See Sears v. Roberts*, 922 F.3d at 1208 n.4 ("In any event, the nurse's report does not establish whether force was applied to Sears after he was handcuffed and compliant."); *Joassin*, 661 F. App'x at 560 ("[T]he nurse's declaration and medical records, if credited, refute Joassin's allegations only as to the severity of existence of Joassin's injuries.  The nurse does not claim to have witnessed any potion of the allegedly excessive use of force.").  In any event, a reasonable jury could conclude

that Plaintiff's medical records do not include a diagnosis for a dislocated shoulder on October 8, 2014, because, as Plaintiff stated, he attempted to correct the displacement before his examination.  ECF No. 89-15 at 44–45.

At bottom, any discrepancy between Plaintiff's sworn statements, Defendants' testimony, and the medical records may be fertile ground for cross-examination at trial or a matter for debate during jury deliberations, but it is not a basis for summary judgment.  *See Anderson*, 477 U.S. at 29 ("[A]t the summary judgment stage the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").  Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment failure to intervene claims is **DENIED**.

### B.    Eighth Amendment Deliberate Indifference Claim

Defendant Johnson's motion for summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim also fails because there are genuine issues of material fact. [10]  Deliberate indifference to the serious medical needs of prisoners violates the Constitution's prohibition against

---

[10] Plaintiff has only sued Ms. Butler for her aforementioned failure to intervene, which he contends violated the Eighth Amendment.  ECF No. 89-15 at 42 ("And that's my basis for suing Ms. Butler, because her failure to intervene.").

cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To establish a constitutional violation stemming from the deprivation of medical attention, a prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

A prisoner has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). In either situation, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow*, 320 F.3d at 1243 (alterations adopted).

To show that the prison official was deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); *see also Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (holding the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary

20

and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Turning to this case, Plaintiff has alleged that Defendant Johnson was deliberately indifferent to his serious medical need when he canceled Plaintiff's "treatment" and denied him "needed care."  ECF No. 15 at 11.  The thrust of Plaintiff's complaint is the shoulder pain that he claims was the product of the October 7, 2014, assault.  ECF No. 89-15 at 52.

Defendants argue they are entitled to summary judgment on an Eighth Amendment claim generally—mostly for the reasons the undersigned has already rejected—but do not address the elements of deliberate indifference to a prisoner's serious medical need that the Court describes above.  Nor have Defendants addressed the crux of Plaintiff's claim—that Defendant Johnson, in concert with Hudson, obstructed Plaintiff's medical care.

Instead, Defendants focus on the issue of whether they were deliberately indifferent to a prison condition.  *See, e.g.*, ECF No. 89 at 13 ("Whether an unsafe condition results in a substantial risk of harm is determined on an objective standard."); *id.* at 12 (referring to "prison-condition cases" generally).  In short, Defendant Johnson asserts that he

21

"did not perceive any substantial risk of harm," *id.* at 15, and "[a] review of Plaintiff's medical records indicates that Plaintiff has never been diagnosed with a dislocated shoulder," *id.* at 16.

Genuine issues of material fact preclude summary judgment on Plaintiff's deliberate indifference claim against Defendant Johnson.  As explained above, the parties present competing testimony of what occurred on October 7, 2014, between Defendants, Hudson, and Plaintiff.  Plaintiff claims he was screaming in pain when Hudson attacked him and that Defendant Johnson encouraged Hudson to "break that bitch out the socket[.]"  ECF No. 89-15 at 41.  Not only is a dislocated shoulder a serious medical condition, *Palmer v. Gjerde*, No. 2:10-cv-98-FtM-36SPC, 2011 WL 308948, at *5 (M.D. Fla. Jan. 27, 2011), but, by Plaintiff's account, Defendant Johnson would have known about the injury because he witnessed it.  This obviates the need for Plaintiff to present—or for Defendant Johnson to know of—a formal medical diagnosis at this juncture. *See Thomsen v. Ross*, 368 F. Supp. 2d 961, 973 (D. Minn. 2005) ("Absent a medical diagnosis, a serious medical need is one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.").

Although Plaintiff was examined the following day, Defendant

Johnson's knowledge is relevant to what Plaintiff claims was a later

unconstitutional interference with the continued treatment of his shoulder.

That is, a reasonable jury may conclude that Defendant Johnson was

deliberately indifferent to a serious risk of harm when he refused to allow

Plaintiff to visit the infirmary for treatment, in part, because he witnessed

the injury itself.  That same jury will first have to determine whether there

was a legitimate penological reason for Defendant Johnson to have

prohibited Plaintiff from visiting the infirmary, as noted in the medical

records, or if that was a pretext for Defendant Johnson to obstruct Plaintiff's

continued medical treatment, as Plaintiff claims.

Accordingly, Defendant Johnson's motion for summary judgment as

to Plaintiff's Eighth Amendment deliberate indifference claim is **DENIED**.

### C.    First Amendment Retaliation Claim

Plaintiff's final claim is one under the First Amendment for retaliation.

"The First Amendment forbids prison officials from retaliating against

prisoners for exercising the right of free speech."  *Farrow*, 320 F.3d at

1248.  An inmate is considered to be exercising his right of free speech

when he complains to prison administrators about the conditions of his

confinement.  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

"An inmate may maintain a cause of action for retaliation under 42

U.S.C. § 1983 by showing that a prison official's actions were 'the result of

the inmate's having filed a grievance concerning the conditions of his

imprisonment.'"  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)

(quoting *Farrow*, 320 F.3d at 1248).

> To prevail on a retaliation claim, the inmate must establish that:
> "(1) his speech was constitutionally protected; (2) the inmate
> suffered adverse action such that the official's allegedly
> retaliatory conduct would likely deter a person of ordinary
> firmness from engaging in such speech; and (3) there is a causal
> relationship between the retaliatory action (the disciplinary
> punishment) and the protected speech (the grievance)."

*Id.* (quoting *Smith*, 532 F.3d at 1276); *Bennett v. Hendrix*, 423 F.3d 1247,

1250 (11th Cir. 2005).  "To establish causation, the plaintiff must show that

the defendant was 'subjectively motivated to discipline' the plaintiff for

exercising his First Amendment rights."  *Moton v. Cowart*, 631 F.3d 1337,

1341 (11th Cir. 2011).

Defendant Johnson avers that summary judgment is warranted

because Plaintiff has "fail[ed] to state any cause of action for retaliation"

and any claim based on the October 6, 2014, disciplinary report is barred

under *O'Bryant*.  Plaintiff, however, has alleged under penalty of perjury

that Defendant Johnson, in concert with Hudson, withheld medical care

from him.  ECF No. 15 at 10.

If a reasonable jury finds that Plaintiff did not present a security risk in

November 2014 and should have been allowed to visit the infirmary on the dates reflected in the medical records, it could easily find that Defendant Johnson withheld medical treatment from Plaintiff as a means of retaliation. *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) ("To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."); *Oliver v. Calderon*, No. 6:17-cv-1792-Orl-31TBS, 2019 WL 1254844, at *5 (M.D. Fla. Mar. 19, 2019) ("Plaintiff's allegations that Defendants prevented him from attending medical appointments and denied him medical treatment as a result of filing grievances, if proven true, support a First Amendment violation.").  And because this claim does not implicate the October 6, 2014, disciplinary report, Defendant Johnson cannot rely upon *O'Bryant.*  Defendant Johnson's motion for summary judgment as to Plaintiff's First Amendment retaliation claim, therefore, is **DENIED**.[11]

---

[11] The undersigned does not address whether a reasonable jury may find the other two elements of retaliation—whether Plaintiff's speech was constitutionally protected and whether a causal relationship exists between the action and the protected speech—because Defendant Johnson does not challenge those elements.  The undersigned, however, did not consider Plaintiff's other allegations of retaliation because there is no evidence in the record beyond Plaintiff's conclusory statements that, following the October 7, 2014, incident, Defendant Johnson and Hudson filed frivolous disciplinary reports or stole Plaintiff's grievances.

### D.   The PLRA Bar on Compensatory Damages

Lastly, Defendants argue they are entitled to summary judgment under the PLRA because Plaintiff claims he had a dislocated shoulder but was diagnosed with osteoarthritis, which was not caused by Defendants alleged inaction.  ECF No. 89 at 25.  Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act as defined in section 2246 of title 18)."  42 U.S.C. § 1997e(e).

"[T]he physical injury must be more than de minimis, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated*, 197 F.3d 1059 (1999), *reinstated in relevant part*, 216 F.3d 970, 972 (2000).  Although the meaning of the phrase "greater than de minimis" is "far from clear," *Chatham v. Adcock*, 334 F. App'x 281, 284 (11th Cir. 2009), the undersigned concludes that Plaintiff's alleged dislocated shoulder passes muster.  *See Brinson v. Jackson*, No. CV412-105, 2013 WL 1180832, at *1 (S.D. Ga. Mar. 20, 2013) ("A dislocated finger is more than de minimis, though not significant."); *Cotney v. Bowers*, No. 2:03-cv-1181-WKW, 2006 WL 2772775, at *7 (M.D. Ala. Sept. 26, 2006) (holding the plaintiff's testimony that he suffered bruises to his ribs from officer's use

26

of force and that the bruises healed after several weeks without treatment

surmounted PLRA's de minimis injury bar because the plaintiff put forth

evidence from which a jury could determine his physical injuries were more

than de minimis).  Plaintiff, therefore, may pursue his claim for

compensatory damages.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendants'

Motion for Summary Judgment, ECF No. 89, should be **DENIED**.

**IN CHAMBERS** this 25th day of February 2020.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

27